UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTELL HARPER,

      Petitioner,
                                  Case No. 19-10232
                                  Honorable Linda V. Parker

v.

SHERRY BURT,

      Respondent.

_____/

**OPINION AND ORDER (1) DENYING THE PETITION FOR WRIT OF
HABEAS CORPUS, (2) DENYING A CERTIFICATE OF
APPEALABILITY, AND (3) GRANTING PERMISSION TO APPEAL IN
FORMA PAUPERIS**

      Petitioner, Martell Harper, filed this pro se petition for a writ of habeas

corpus pursuant 28 U.S.C. § 2254.  Petitioner challenges his convictions, following

a jury trial in the Wayne County Circuit Court, of second-degree murder,

discharging a weapon from a motor vehicle, and possession of a firearm during the

commission of a felony.  Petitioner raises eight grounds for relief as follows:

          I.     The evidence of first-degree murder was insufficient
          where the government failed to establish each essential element
          of the charged offense, in violation of Petitioner's right to due
          process.

          II.     Where the prosecutor's improper remarks in closing
          argument deprived Petitioner of a fair and impartial trial,
          reversal of Petitioner's convictions is required.

III.    Petitioner's right to due process and fair trial was violated by prosecutorial misconduct, where the government spoke of Petitioner's pre-arrest silence.

IV.    Petitioner's rights under the Due Process Clause of the Fourteenth Amendment were violated by the court's jury charge.

V.    Petitioner's conviction of second-degree murder is supported by insufficient evidence.

VI.    Petitioner's sentences were imposed in violation of his Sixth and Fourteenth Amendment rights.

VII.   Petitioner was denied the effective assistance of trial counsel.

VIII.  Petitioner is entitled to relief and a new trial because he was denied his right to the effective assistance of counsel on his direct appeal.

(ECF No. 1.)  The Court denies the petition because the claims are without merit.

The Court also denies Petitioner a certificate of appealability but grants him

permission to appeal in forma pauperis.

## I. Background

Petitioner's convictions arise from the shooting death of Shawn Rutherford

on October 28, 2011.  He was charged with first-degree premeditated murder,

Mich. Comp. Laws § 750.316, discharging a weapon from a motor vehicle, Mich.

Comp. Laws § 750.234a, and possession of a firearm during the commission of a

felony, Mich. Comp. Laws § 750.227b.  A jury acquitted Petitioner of first-degree

murder and instead convicted him of second-degree murder, Mich. Comp. Laws §

750.317, and the remaining charges.  On February 22, 2012, the trial court

sentenced Petitioner to twenty-five years to forty years for second-degree murder,

two to four years for discharging a weapon from a vehicle, and two years for

felony firearm.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising

a single claim through counsel: his right to due process was violated by submitting

the first-degree murder charge to the jury because insufficient evidence supported

the charge.  He also raised two prosecutorial misconduct claims in a pro se

supplemental brief.  The Michigan Court of Appeals affirmed Harper's

convictions, setting forth the following relevant facts:

> On October 28, 2011, defendant's 14-year-old nephew
> told him that he had been shot at by someone defendant
> knew, [Shawn Rutherford].  Defendant also believed that
> [Rutherford] had broken into his home and stole[n] two of
> defendant's guns.  Defendant proceeded to drive to
> [Rutherford's] aunt's home with his nephew.  When he
> arrived, the decedent's vehicle was in the driveway.
> Witness testimony included that defendant fired several
> gunshots in the direction of the vehicle and house while
> driving by and then turned his vehicle around and fired
> additional gunshots in the same direction.  Defendant
> testified that [before the shooting] he went to the house to
> get the license plate number from the vehicle in the
> driveway, but had a confrontation with someone at the
> house so he left.  When he returned a short time later,
> [Rutherford] pointed a gun at him so defendant fired
> gunshots and left.  Ultimately, [Rutherford] was shot in the
> head and was found sitting in the driver's seat of his
> vehicle that was parked in the driveway.  That vehicle had
> evidence of several gunshot strikes.

*People v. Harper*, No. 309321, 2013 WL 2278062, at \*1 (Mich. Ct. App. May 23, 2013). These facts are presumed correct on habeas review under 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). Petitioner sought and was denied leave to appeal in the Michigan Supreme Court. *People v. Harper*, 839 N.W.2d 219 (Mich. 2013).

Petitioner filed a motion for relief from judgment in the trial court raising five of the claims raised in the current petition (claims IV through VIII). The trial court denied the motion. *People v. Harper*, No. 11-012059-01 (Wayne County Cir. Ct. Aug. 15, 2016). The Michigan Court of Appeals denied Petitioner's application for leave to appeal. *People v Harper*, No. 336957 (Mich. Ct. App. March 29, 2017). The Michigan Supreme Court also denied leave to appeal. *People v. Harper*, 503 Mich. 856 (Mich. Sept. 12, 2018). Petitioner then filed the pending petition for the writ of habeas corpus. (ECF No. 1.)

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' [the Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of [the] petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. … The state court's application must have been 'objectively

unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* at 102. A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). This presumption is rebutted only with clear and convincing evidence. *Id.* Moreover, for claims adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.  Discussion

### A. Procedural Default

Respondent asserts that Petitioner's second through seventh claims may not be reviewed by this Court because they are procedurally defaulted.  (ECF No. 7.) Under the doctrine of procedural default, a federal court generally may not review claims that a habeas petitioner has defaulted in state court "pursuant to an independent and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  The procedural default doctrine is not jurisdictional, and the Court may bypass this question where proceeding directly to the merits is more efficient. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [merits] question priority . . .  if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.").  The Court will proceed to the merits of Petitioner's claims without deciding the procedural-default issue because it is more efficient.

### B. Submission of First-Degree Murder Charge to Jury (Claim I)

In his first claim, Petitioner argues that his right to due process was violated by submitting the first-degree murder charge to the jury.  He maintains that the evidence did not support the charge resulting in an improper compromise verdict.

The Michigan Court of Appeals held that sufficient evidence was presented to support submission of the first-degree murder charge to the jury.  The state court relied on evidence that there was a standing feud between Petitioner and the decedent, Petitioner drove to the victim's home with a loaded gun after his nephew claimed to have been shot at by the victim, witnesses testified that Petitioner drove past the victim's home firing several gunshots from his vehicle toward the victim's car, and then turned around and again fired toward the home and vehicle.  *Harper*, 2013 WL 2278062 at *1.  Further, the decedent was found shot in the head and his "vehicle was riddled with several gunshot strikes." *Id*.

According to the state court's factual determinations and the presumption of correctness, the Court holds that the state court's decision was not an unreasonable application of Supreme Court precedent.  *See e.g., Daniels v. Burke*, 83 F.3d 760, 765 n.4 (6th Cir. 1996) (where a state court's decision that sufficient evidence supported submission of a charge to the jury is supported by the evidence, no due process violation occurred).  Petitioner's due process claim is therefore meritless.

### C. Prosecutorial Misconduct (Claims II and III)

In his second and third claims, Petitioner asserts that his right to due process was violated by the prosecutor's misconduct.  Specifically, he argues that the prosecutor's closing and rebuttal arguments were inflammatory, and that the prosecutor improperly referenced his pre-arrest silence during cross-examination.

8

A prosecutor's misconduct violates a criminal defendant's constitutional rights if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned." *Id.* (internal quotation omitted).  To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial fundamentally unfair." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted).

Petitioner first challenges the following arguments by the prosecutor during closing and rebuttal arguments:

> [Defendant] works as a security guard at a school.  He's trained in the use of weapons.  He even owns an AK–47.  Why an AK–47?  Unrelated to this case, but he has weapons.  He knows how to use weapons and then he's involved in a shooting....
>
> ***
>
> [The victim] was in the van and he was executed and assassinated by this Defendant.

*Harper*, 2013 WL 2278062, at *2.

Petitioner argues that the prosecutor referenced the AK-47 for the sole purpose of prejudicing the defense.  He maintains that "an AK-47 weapon represents death, terrorism and most of all, fear!" (ECF No. 1 at Pg ID 17.)

9

Petitioner further argues that the prosecutor used the words "executed" and "assassinated" only to inflame the juror's passions.  (*Id.* at 18.)

The Michigan Court of Appeals found no prosecutorial misconduct.  First, the court held that the prosecutor's reference to the AK-47 was supported by the evidence and relevant because the prosecutor theorized that Petitioner's belief that the victim had stolen his missing AK-47 prompted the shooting.  *Harper*, 2013 WL 2278062 at *2.  Second, the state court held that the facts of the murder supported the prosecutor's statement that the victim was executed and assassinated.  *Id.*  The state court noted that "while the prosecutor's characterization of the shooting as an 'assassination' may be considered hard or emotional language, in light of the evidence, it did not constitute plain error affecting defendant's substantial rights." *Id*. (citing *People v. Dobek*, 732 N.W.2d 546, 555 (Mich. App. 2007) ("The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms.")); *People v. Ullah*, 550 N.W.2d 568, 573 (Mich. App. 1996) (Prosecutors may use "hard language" if it is supported by evidence.)).

The record supports the state court's decision.  First, Petitioner testified that he suspected that Rutherford burglarized his home and stole two weapons, including an AK-47.  (ECF No. 8-6 at Pg ID 698; 712-13).  This testimony supported the theory that Petitioner shot Rutherford in retaliation for a burglary

and, therefore, the AK-47 was relevant.  Second, while the prosecutor used strong words in closing argument, the state court's decision that the evidence supported the language was not unreasonable.  Moreover, to the extent that the prosecutor's arguments could be seen as improper, they were not so pervasive or misleading as to render the trial fundamentally unfair.

Next, Petitioner claims that the prosecutor committed misconduct by asking him why he did not contact police when he first went to the victim's aunt's house and someone fired their weapon into the air to scare him away.  The Michigan Court of Appeals found no misconduct because the prosecutor's questions focused on impeachment:

> At trial defendant testified on direct examination that when he first arrived at the decedent's aunt's house to secure the license plate number of the decedent's van someone fired gunshots into the air and defendant left. When he later returned to secure the license plate number, the decedent pointed a gun at him so defendant fired several shots at him.  During cross-examination the prosecutor asked defendant if he called 911 after the person fired gunshots into the air the first time defendant was at the house and defendant replied in the negative. The prosecutor asked if defendant called 911 or notified police that the decedent pointed a gun at him and that defendant then fired several shots in return as he was required to do as a concealed weapons permit holder and defendant replied in the negative.  The prosecutor also asked defendant if he ever notified the police of these events at any time after the shooting and defendant replied in the negative.

11

> The questions by the prosecutor were clearly designed to illustrate that, if defendant had been the "victim" of a crime as he claimed at trial, he would have notified the police. As in the case of *People v. Collier*, 393 N.W.2d 346 (Mich. 1986), the prosecutor's questions alluded to defendant's silence before contact with police, not after his arrest. *See id*. at 31. As in the *Collier* case, here defendant claimed he was a victim, not a perpetrator, and the prosecutor was merely pointing out that it would be natural and expected for defendant to have reported the alleged criminal acts of the decedent to police because defendant knew the decedent's identity and the location of the alleged crime. *See id*. at 34-35. Thus, the questions were designed to cast doubt on the credibility of defendant's testimony; that is, if defendant's version of the events was true, he would have reported the crime. *See id*. at 35. The prosecutor did not ask the jury to infer guilt because of defendant's post-arrest silence, but instead urged that defendant's testimony was unbelievable. *See id*. at 35-36. Accordingly, defendant has failed to establish plain error affecting his substantial rights with regard to his prosecutorial misconduct claim.

*Harper*, 2013 WL 2278062, at *3.

A prosecutor may use a defendant's pre-arrest silence to impeach the defendant's credibility. *Jenkins v. Anderson*, 447 U.S. 231, 239 (1980). Additionally, the prosecution may use a defendant's pre-arrest silence as substantive evidence of guilt as long as the defendant "did not *expressly* invoke the privilege against self-incrimination." *Salinas v. Texas*, 570 U.S. 178, 181 (2013) (plurality opinion) (emphasis added)*; see also Abby v. Howe*, 742 F.3d 221, 228 (6th Cir. 2014) (defense counsel was not ineffective in failing to object to use of defendant's pre-arrest silence where defendant did not expressly invoke his right to

remain silent).  A defendant "does not invoke the privilege by remaining silent."

*Salinas*, 570 U.S. at 186.  Petitioner did not invoke his right to remain silent.

Accordingly, Petitioner has not shown that the state court's decision was contrary

to, or an unreasonable application of, clearly established federal law.  Further,

admission of the testimony about Petitioner's pre-arrest silence in this case would

have been harmless error, in light of its limited nature and the other evidence

against petitioner.  *See United States v. Banks*, 29 F. App'x 276, 284 (6th Cir.

2002).

### D. Jury Instructions (Claim IV)

In his fourth claim, Petitioner contends that he was denied his right to due

process by deficient jury instructions.  Obtaining federal habeas relief for a jury

instruction claim is "a difficult hill to climb."  *Keahey v. Marquis*, 978 F.3d 474,

478 (6th Cir. 2020).  To show that a jury instruction violates due process, a habeas

petitioner must demonstrate "both that the instruction was ambiguous and that

there was a reasonable likelihood that the jury applied the instruction in a way that

relieved the State of its burden of proving every element of the crime beyond a

reasonable doubt."  *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009)

(citations omitted).  A federal court may not grant the writ of habeas corpus on the

ground that a jury instruction was incorrect under state law; instead, the relevant

inquiry is "whether the ailing instruction so infected the entire trial that the

resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  The jury instruction "must be considered in the context of the instructions as a whole and the trial record." *Id.* at 72.

Harper first argues that the self-defense instruction improperly required the jury to consider whether he had any options to defend himself other than deadly force.  (ECF No. 1 at Pg ID 34-35.)  He maintains that he was entitled to an instruction under Mich. Comp. Laws § 780.972(1), which did not impose a requirement that he consider other options.  Section 2 of Michigan's self-defense act reads in part as follows:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

Mich. Comp. Laws § 780.972.  The trial court issued the last reasoned state-court opinion denying this claim and held that Petitioner was not entitled to such an instruction under state law because he was involved in criminal activity when he used deadly force.  (ECF No. 8-9 at Pg ID 835-36.) Namely, discharging a firearm at a facility that they know or have reason to believe is a dwelling or a potentially occupied structure.  (*Id.*)  It is not the

province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). The Court must defer to the state court's holding that the instruction accurately reflected and was appropriate under state law.

Next, Harper argues that the trial court's instruction on causation improperly directed a verdict on the causation element. The court instructed the jury that, to find Harper guilty, the jury had to find that "the Defendant caused the death of Shawn Rutherford. That is, that Shawn Rutherford died as a result of a gunshot wound." (ECF No 8-6 at Pg ID 764.) Petitioner argues that this instruction effectively directed the jury to find him guilty if the jury found that Rutherford died as a result of a gunshot wound. The state court held that the instruction was not improper because causation was not in dispute where Petitioner admitted shooting at Rutherford but claimed to have done so in self-defense. (ECF No. 8-9 at Pg ID 836.)

The state court's decision was neither contrary to, nor involved an unreasonable application of clearly established federal law. The trial court instructed the jury that the prosecution's burden was to prove each element beyond a reasonable doubt. Further, the Sixth Circuit Court of Appeals has held that an essentially identical instruction did not direct a verdict as to the causation element. *See Thompson v. Nagy*, 2018 WL 8731570, *4 (6th Cir. Nov. 20, 2018).

### E. Sufficiency of the Evidence (Claim V)

Petitioner's fifth claim concerns the sufficiency of the evidence.  He argues that the evidence was insufficient to support his second-degree murder conviction because the prosecution failed to disprove self-defense.  The trial court denied this claim on the ground that Petitioner had already raised the claim on his appeal of right and thus was precluded under Michigan Court Rule 6.508(D)(2) from raising it in his post-conviction motion.  (ECF No. 8-9 at Pg ID 836-37.)  Petitioner correctly argues that he did not raise this claim on direct appeal and the trial court mistakenly applied Rule 6.508(D)(2).  Because the state court did not adjudicate the merits of Petitioner's claim, the Court reviews the claim *de novo*.  *See McKenzie v. Smith*, 326 F.3d 721, 726 (6th Cir. 2003).

Sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  The elements of second-degree murder under Michigan law are: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v. Roper*, 777 N.W.2d 483, 489 (Mich. App. 2009) (quotation omitted).  Malice is defined as "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency

16

of such behavior is to cause death or great bodily harm." *People v. Goecke*, 579 N.W.2d 868, 878 (Mich. 1998).

Petitioner argues that the prosecution failed to present sufficient evidence to rebut his claim of self-defense. This claim is not cognizable on habeas review. Self-defense is an affirmative defense under Michigan law. *See Christian v. Romanowski*, No. 17-1279, 2017 WL 4083632, at *3 (6th Cir. Aug. 25, 2017). The Constitution does not require "proof of the nonexistence of all affirmative defenses." *Smith v. United States*, 568 U.S. 106, 110 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)). "[T]he due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999), *abrogated on other grounds by Mackey v. Dutton,* 217 F.3d 399, 406 (6th Cir. 2000)).

Even if Petitioner's claim that the prosecutor failed to disprove self-defense was cognizable on habeas review, it does not entitle him to relief. Petitioner testified that he drove to Shirley Henderson's house on the afternoon of the shooting after he learned that Rutherford and Kennis Pearson (Henderson's son) shot at his nephew. (ECF No. 8-6 at Pg ID 675-76.) Petitioner explained that he drove past the house the first time to record Rutherford's license plate and, he

testified, only fired his gun when he drove by a second time and Rutherford pointed a gun at him. (*Id.* at 681-83.) Several witnesses gave a different account of the shooting. Shirley Henderson and Jalen Hill testified that Petitioner fired shots toward Rutherford's vehicle on his first pass by the house, then turned his vehicle around and fired more gunshots during his second pass. (ECF No. 8-5 at Pg ID 455-56, 547-48.) There was testimony that Petitioner was seated in the driver seat of his vehicle when the shooting began. (*Id.* at 501-02.) Several witnesses testified that they did not see Rutherford with a gun that day. (*Id.* at 505, 550.)

Viewing this evidence in the light most favorable to the prosecution, a rational jury could have concluded that the prosecution negated Petitioner's self-defense claim beyond a reasonable doubt. Therefore, habeas relief is not warranted on this claim.

### F. Sentencing Claim (Claim VI)

In his sixth claim, Petitioner argues that the trial court improperly scored his sentencing guidelines based on facts not admitted by Petitioner or found by a jury beyond a reasonable doubt.

The Sixth Amendment's guarantee of a trial by jury means that "[a]ny fact that, by law, increases the penalty for a crime . . . must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 103

(2013).  In *Robinson v. Woods*, 901 F.3d 710 (6th Cir. 2018), the Sixth Circuit held

that "*Alleyne* clearly established the unconstitutionality of Michigan's mandatory

sentencing regime."  *Id.* at 714.  This law is controlling here.

Respondent, relying on *Greene v. Fisher*, 565 U.S. 34 (2011), argues that

*Alleyne* does not benefit Petitioner because it was issued approximately one month

after the Michigan Court of Appeals affirmed Petitioner's convictions.  Therefore,

Respondent maintains, *Alleyne* was not "clearly established Federal law" which

could form the basis for habeas relief.  This argument is directly contradicted by

the Supreme Court's decision in *Greene*.

Respondent correctly notes that, in *Greene*, the Supreme Court held "clearly

established Federal law" does not include decisions of the Supreme Court that are

announced after the last adjudication of the merits in state court but before the

defendant's conviction becomes final.  *Greene*, 565 U.S. at 37-39; *see also Miller

v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) ("[U]nder 28 U.S.C. § 2254(d),

"clearly established Federal law" is the law at the time the original decision was

made, not … the law "before the conviction became final.").  But Respondent fails

to recognize that the Supreme Court also held that the relevant state court decision

is the decision which addressed the merits of the claim at issue.  *Greene*, 565 U.S.

at 39-40.  The *Greene* court specifically rejected the argument advanced by

Respondent in this case:

> Greene alternatively contends that the relevant 'decision' to which the 'clearly established Federal law' criterion must be applied is the decision of the state supreme court that disposes of a direct appeal from a defendant's conviction or sentence, even when (as here) that decision does not adjudicate the relevant claim on the merits. This is an implausible reading of § 2254(d)(1).

*Id.* at 39-40.

In this case, the Michigan Court of Appeals did not address the merits of Petitioner's judicial-factfinding claim on direct review. *Alleyne*, therefore, must be applied to the trial court's decision denying Petitioner's motion for relief from judgment, that is, the decision which addressed the merits of this claim.

The trial court denied Petitioner's *Alleyne* claim on the grounds that *Alleyne* was decided after the Michigan Court of Appeals issued its opinion and *Alleyne* was inapplicable to Michigan's sentencing guidelines. (ECF No. 8-9 at Pg ID 837-38.) This decision was incorrect on both grounds. First, *Alleyne* applied to Petitioner's case because "Supreme Court opinions apply to all criminal cases pending on direct review." *Robinson*, 901 F.3d at 714-15 (citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)). Second, the trial court's decision that Michigan's sentencing scheme did not violate the Sixth Amendment was contrary to *Alleyne*. *Id.* at 717. Petitioner, however, is not entitled to resentencing on this claim because any error was harmless. *See Washington v. Recuenco*, 548 U.S. 212,

222 (2006) (failing to submit a sentencing factor to the jury is subject to a harmless error analysis).

Michigan's sentencing scheme utilizes offense variables (OVs) and prior record variables (PRVs) to come to a guidelines range. In this case, Petitioner's PRV total was fifteen points and his OV total was ninety points, giving him a guideline range of 180 to 300 months. Petitioner does not specify which OVs or PRVs were scored using judge-found facts. So, the Court will review all OVs and PRVs scored above a zero.

Petitioner's total prior record variable score, fifteen points, was calculated based entirely on prior convictions. (ECF No. 8-8 at Pg ID 813-14.) The Supreme Court has made clear that a judge may find "the fact of a prior conviction" during sentencing without violating the Constitution. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Thus, the calculation of Petitioner's prior record variable score was not contrary to *Alleyne*.

A review of the offense variables scoring requires a more detailed analysis. OVs 1 and 2 were scored based upon facts admitted by Petitioner. Michigan law provides that OV 1 should be scored at twenty-five points where: "(a) A firearm was discharged at or toward a human being . . ." Mich. Comp. Laws § 777.31(a). During his trial testimony, Petitioner admitted to pointing and firing his gun at Rutherford. So, OV 1 was scored at twenty-five points based on Petitioner's own

admission.  This same testimony supported the scoring of OV 2, which allows five

points to be scored if the offender possessed or used a gun.  *See* Mich. Comp. Laws

§ 777.32(d).

The trial court also scored 25 points for OV3, regarding physical injury to a

victim.  Mich. Comp. Laws § 777.33(1).  In *People v. Houston*, 702 N.W.2d 530,

531 (Mich. 2005), the Michigan Supreme Court addressed the proper scoring of

OV3 in a case where, as in this case, the defendant was convicted of second-degree

murder for shooting the victim in the head.  Twenty-five points should be scored

for "life-threatening bodily injury requiring medical treatment sustained by the

victim." Mich. Comp. Laws § 777.33(1)(c).  The Michigan Supreme Court held

that death qualifies as a "life-threatening" injury.  *Houston*, 702 N.W.2d at 531.

Here, the jury found beyond a reasonable doubt that Petitioner was guilty of

second-degree murder.  As such, the facts supporting this scoring were decided by

a jury.

The scoring of OV 6 was also justified by the jury's verdict.  OV 6 is scored

at twenty-five points if: "The offender had unpremeditated intent to kill, the intent

to do great bodily harm, or created a very high risk of death or great bodily harm

knowing that death or great bodily harm was the probable result."  Mich. Comp.

Laws § 777.36.  Malice is an element of second-degree murder and is defined as

"intent to kill, the intent to cause great bodily harm, or the intent to do an act in

wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Stewart v. Wolfenbarger*, 595 F.3d 647, 654 (6th Cir. 2010) (citing *People v. Aaron*, 299 N.W.2d 304 (Mich. 1980)).  The jury's verdict required a finding that twenty-five points should be scored for OV 6.

Finally, the trial court scored ten points for OV 9 finding there were "2 to 9 victims who were placed in danger of physical injury . . ."  Mich. Comp. Laws § 777.39(1)(c).  This scoring relied on judge-found facts and under an *Alleyne* analysis must be changed to zero, which lowers Petitioner's total offense variable score from ninety to eighty.  With that score, Petitioner's minimum sentence range is unchanged at 180 to 300 months.  *See* Mich. Comp. Laws §§ 777.16p; 777.61.  Any error, therefore, was harmless.  *See, e.g., United States v. Charles*, 138 F.3d 257, 268 (6th Cir. 1998) ("Because the sentence range would be identical even if this court adopted Charles's assertions on the proper amount of drugs he sold, any calculation errors on the part of the district judge would constitute harmless error."); *United States v. Dyer*, 478 F. App'x 308, 309 (6th Cir. 2012) (finding any error in calculating guidelines range was harmless because correcting the error would not have lowered defendant's sentencing guidelines range."); *United States v. Punschke*, 247 F. App'x 789, 794 (6th Cir. 2007) (holding that error in

calculating criminal history points was harmless because correction would not change sentencing guideline range).

### G. Ineffective Assistance of Trial Counsel (Claim VII)

Petitioner next raises several ineffective assistance of counsel claims. Specifically, Petitioner argues that counsel: (i) failed to object to an improper self-defense instruction; (ii) failed to move for a directed verdict on the second-degree murder charge; (iii) failed to object to the sentence on Sixth Amendment grounds; (iv) failed to object to the prosecutor's misconduct.  (ECF No. 1 at Pg ID 45-46.)

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient, and the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  To establish that an attorney's deficient performance prejudiced the defense, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  A reasonable probability requires "that the likelihood be 'substantial,' not just 'conceivable.'"  *Taylor v. Patel*, 2021 WL 3520819, *5 (6th Cir. Aug. 11, 2021) (quoting *Cullen*, 563 U.S. at 189).  "Surmounting *Strickland*'s high bar is never an

. . . easy task," but it is "all the more difficult" to accomplish under AEDPA. *Harrington*, 562 U.S. at 105 (quotation omitted).  AEDPA and *Strickland* standards are both "highly deferential," and "when the two apply in tandem, review is 'doubly' so."  *Id.*

The trial court denied Petitioner's ineffective assistance of counsel claims when it denied his motion for relief from judgment.  The court held that counsel was not ineffective because the objections Plaintiff argued counsel should have raised were meritless and counsel is not ineffective for failing to raise meritless claims.  (*See* ECF No. 9 at Pg ID 838-40.)  This decision did not contravene or unreasonably apply *Strickland*.

### H. Ineffective Assistance of Appellate Counsel (Claim VIII)

Finally, Harper argues that appellate counsel was ineffective in failing to raise on direct review the claims raised in the pending habeas petition.

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal by right.  *See Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985).  But a defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *Jones v. Barnes*, 463 U.S. 745, 754 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. .

> . . Nothing in the Constitution or our interpretation of that
> document requires such a standard.

*Id*. at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Counsel is not ineffective for failing to raise a meritless claim on direct review. *Bennett v. Brewer*, 940 F.3d 279, 286 (6th Cir. 2019).  Because the Court has determined that the claims not raised on direct appeal lack merit, appellate counsel was not ineffective for failing to include them on direct review.

## IV.  Certificate of Appealability

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  "[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition.  Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve

encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (2003) (internal quotes and citations omitted). The Court finds that reasonable jurists would not debate the resolution of any of Petitioner's claims. Therefore, the Court denies Petitioner a certificate of appealability.

The Court grants Petitioner leave to appeal in forma pauperis because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

Accordingly,

**IT IS ORDERED** that Petitioner's application for the writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Petitioner is **DENIED** a certificate of appealability but is **GRANTED** leave to proceed in forma pauperis on appeal.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: December 12, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, December 12, 2022, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager